## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Lofera Legrier, individually and on behalf of all others similarly situated, | Civil Action No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| Amazon.com Services LLC., | |
| Defendant. | |

Plaintiff Lofera Legrier ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Amazon.com Services LLC. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on her personal knowledge.

### NATURE OF THE ACTION

1. Defendant formulates, manufactures, advertises, and/or sells its "Happy Belly" brand "In 100% Juice" bowls and canned fruits (the "Products")[1] throughout the United States, including in New York. Defendant markets its Products in a systematically misleading manner by conspicuously misrepresenting on the labels of the Products that their respective fruits are contained "In 100% Juice." Defendant reinforces these misrepresentations by adding vignettes and display windows that purport to show both the fruit and the juice they are contained in.

---

[1] The Fruit Bowls include Defendants "Happy Belly": (1) "Yellow Cling Diced Peaches in 100% Juice"; (2) "Diced Pears in 100% Juice"; (4) "Cherry Mixed Fruit In 100% Juice"; and (4) "Mandarin Orange In 100% Juice"; and (5) "Yellow Cling Sliced Peaches in 100% Fruit Juice."

2.        Unbeknownst to consumers, however, the Products all share common ingredients that belie their "100% Juice" representations: citric acid and/or citric acid—two well-documented synthetic ingredients.

3.        Defendant's most recent labeling of its Products, along with their respective ingredient lists, are depicted below:



//
//
//
//
//
//
//
//
//
//



**Front**

IN 100% JUICE

**Back**

INGREDIENTS: PEARS, WATER, WHITE GRAPE JUICE CONCENTRATE, LEMON JUICE CONCENTRATE, ASCORBIC ACID (VITAMIN C) TO PROTECT COLOR, NATURAL FLAVOR, CITRIC ACID.



**Front**

IN 100% JUICE

**Back**

INGREDIENTS: PEACHES, PEARS, WATER, WHITE GRAPE JUICE CONCEN-TRATE, CHERRIES ARTIFICIALLY COLORED RED WITH CARMINE, LEMON JUICE CONCENTRATE, NATURAL FLAVOR, ASCORBIC ACID (VITAMIN C) TO PROTECT COLOR, CITRIC ACID.

3



**Front**

**IN 100% JUICE**

**Back**

**INGREDIENTS**:MANDARIN ORANGES, WATER, WHITE GRAPE JUICE CONCENTRATE, LEMON JUICE CONCENTRATE, ASCORBIC ACID (VITAMIN C) TO PROTECT COLOR, CITRIC ACID.



**IN 100% FRUIT JUICE**

**INGREDIENTS**: PEACHES, WATER, PEAR JUICE CONCENTRATE, PEACH PULP AND JUICE, ASCORBIC ACID (VITAMIN C) TO PROTECT COLOR.

**Front**                    **Back**

4

4.      As a result of its deceptive conduct, Defendant is, and continues to be, unjustly enriched at the expense of its consumers.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.[2]

6.      This Court also has personal jurisdiction over Defendant because it conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this State, including Plaintiff's purchases.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business in this District and a substantial part of the events giving rise to Plaintiff's claims took place within this District.

## PARTIES

8.      Plaintiff Lofera Legrier is a citizen of New York, who resides in Newburgh, New York. Plaintiff purchased Defendant's Products for her personal use on various occasions within the applicable statute of limitations, with her most recent purchase of Defendant's "Yellow Cling Diced Peaches in "100% Juice" taking place on or about March of 2023. Plaintiff Legrier made these purchases from Defendant's website www.Amazon.com and/or Defendant's mobile

---

[2] For purposes of diversity, based on public records, Defendant's members/owners are Amazon.com Sales, Inc. and Amazon.com, Inc., both of which are Delaware corporations headquartered in Seattle, Washington. Exhibit A.

application. Prior to making her purchases, Plaintiff Legrier saw that the Products were labeled and marketed as being contained "In 100% Juice." Plaintiff Legrier relied on Defendant's representations when she decided to purchase the Products over comparable products that did not make those claims. Plaintiff Legrier saw Defendant's representations prior to and at the time of her purchases and understood them as a representation and warranty that the Products were exclusively contained "In 100% Juice." Plaintiff Legrier relied on these representations and warranties in deciding to purchase the Products. Accordingly, those representations and warranties were part of the basis of her bargains, in that she would not have purchased the Products on the same terms had she known that those representations were not true. Furthermore, in making her purchases, Plaintiff Legrier paid a substantial price premium due to Defendant's false and misleading representations concerning the Products. Plaintiff Legrier, however, did not receive the benefit of her bargains because those representations were not, in fact, true.

9.      Defendant Amazon.com Services LLC. is a limited liability corporation organized under the laws of Delaware with its principal place of business located in Seattle, Washington. Defendant manufacturers, packages, labels, advertises, markets, distributes and/or sells the Products in New York and throughout the United States.

### GENERAL ALLEGATIONS

*Overview of Defendant's Deceptive Business Practices*

10.      The global juice market has experienced a significant burst of growth as health-oriented consumers have turned to natural juices due to their rich nutritional content: which includes essential vitamins, minerals, and antioxidants. These perceived health benefits, along with the increasing aversion toward synthetic ingredients, have made fruit juices top contenders

in the beverage industry.[3] Indeed, recent consumer surveys indicate that approximately "half of Americans say they seek out natural flavors at least some of the time," with most of these respondents looking for products that are "not artificial or synthetic."[4] In fact, the second largest contributing factor toward consumer confidence regarding the safety of food is that it be labeled as "Having No Artificial Ingredients."[5]

11.    In response to this rise in consumer demand, food and beverage manufacturers pivoted by producing fruit juices *en masse*. Despite this, however, many of these so-called "fruit juices" are merely a hoax—containing the same plethora of synthetic ingredients as previous food and beverage products. Defendant's Products falls squarely within this gamut of deceptive conduct.

12.    By labeling its Products as being contained "In 100% Juice," Defendant deceptively attempts to distinguish itself from other fruit juices that do contain additional synthetic ingredients or preservatives. As discussed in greater depth below, however, Defendant's Products are not contained "In 100% Juice." Instead, they contain "ascorbic acid" and "citric acid"—two well-known synthetic non-juice food additives.

***Overview of Citric Acid and Ascorbic Acid***

13.    Citric acid is a popular food additive in the beverage industry due to its

---

[3] IMARC, *Fruit Juice Market Report by Product Type (100% Fruit Juice, Nectars, Juice Drinks, Concentrates, Powdered Juice, and Others), Flavor (Orange, Apple, Mango, Mixed Fruit, and Others), Distribution Channel (Supermarkets and Hypermarkets, Convenience Stores, Specialty Food Stores, Online Retail, and Others), and Region 2023-2028,* https://www.imarcgroup.com/fruit-juice-manufacturing-plant (last accessed October 6, 2023).

[4] International Food Information Council, *IFIC Survey: From "Chemical-sounding" to "Clean": Consumer Perspectives on Food Ingredients* (June 17, 2021), https://foodinsight.org/ific-survey-from-chemical-sounding-to-clean-consumer-perspectives-on-food-ingredients/ (last accessed October 6, 2023).

[5] International Food Information Council, *2023 Food & Health Survey* (May 23, 2023) at 73, https://foodinsight.org/2023-food-and-health-survey/ (last accessed October 6, 2023).

preservative functions. Although citric acid is naturally occurring when derived from citrus

fruits, producing natural citric acid on an industrial level is prohibitively expensive. As such,

most citric acid is commercially produced, and manufactured, through extensive chemical

processing.[6] In fact, more than 90 percent of commercially produced citric acid, is manufactured

through a processed derivative of black mold, *Aspergillus niger*, which can cause allergic

reactions and diseases in humans.[7]

14.    Citric acid functions in beverages as a preservative by serving as an acidulant and

as an indirect antioxidant. Citric acid infiltrates and weakens or kills microorganisms through

direct antimicrobial effect, lowering a juice product's pH level, thereby combatting and

sequestering microorganisms. Citric acid serves these functions regardless of whether it is also

being added as a flavoring agent.[8] Industry participants also recognize that citric acid functions

as a preservative. For example, one food additives supplier states: "Citric acid is the most

commonly used acidulant in the industry. As a food additive or food grade product, citric acid is

used as a flavoring and preservative. The buffering properties of citrates are used to control pH

and flavor."[9]

---

[6] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7178817/ (last accessed October 6, 2023).

[7] *Id.*; I. Sweis & B. Cressey, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series for four case reports*, 5 TOXICOLOGY REPS., 808-12 (2018); R. Ciriminna et al., *Citric Acid: Emerging Applications of Key Biotechnology Industrial Product*, 11 CHEMISTRY CENT. J. 22 (2017), https://doi.org/10.1186/s13065-017-0251-y (last accessed October 6, 2023); K. Kirimura, Y. Honda, & T. Hattori, *Citric Acid*, 3 COMPREHENSIVE BIOTECHNOLOGY 135 (2011), https://www.sciencedirect.com/science/article/pii/B9780080885049001690 (last accessed October 6, 2023).

[8] Deman, John M. "Acids as food additives serve a dual purpose, as acidulants and as preservatives." *Principles of food chemistry.* AVI Publishing Co., Inc., 1999, p. 438.
[9] FBC Industries, Inc., *Citrates*, https://fbcindustries.com/citrates/ (last accessed October 6, 2023).

15.     Ascorbic acid (also known as Vitamin C) is another popular food additive commonly used in beverages due to its preserving qualities. Although ascorbic acid (like citric acid) can also be produced from natural sources, doing so is prohibitively expensive for companies that require the ingredient in large quantities.[10] As such, most ascorbic acid is commercially produced, and manufactured, through extensive chemical processing.[11]  In fact, the United States Department of Agriculture ("USDA") found that "all commercial ascorbic acid [is] synthetically derived."[12] The reason for this is that, "[w]hile ascorbic acid is naturally produced … its reactive nature makes isolation of the substance from natural sources challenging, which has resulted in all commercial ascorbic acid being synthetically derived."[13]

16.     Ascorbic acid functions as an antioxidant that helps prevent microbial growth and oxidation in food products, thereby preserving their color and freshness.

17.     Due to their strong chemical properties, both citric acid and ascorbic acid can function as a preservative even when used only in trace amounts.[14] In fact, the Food and Drug Administration ("FDA") lists "ascorbic acid" under the heading "Subpart D - Chemical Preservatives." 21 C.F.R. § 182.3013. Furthermore, the FDA classifies and identifies citric acid and ascorbic acid as preservatives in its Overview of Food Ingredients, Additives, and Colors, on

---

[10] Dolchem Quality Chemicals, *Ascorbic Acid Journey: From Production to Applications*, available at: https://www.dolchem.com/blog/ascorbic-acid-journey-from-production-to-applications/ (last accessed October 6, 2023).
[11] *Id.*
[12] U.S. Dep't of Agric., USDA National Organic Program, *Ascorbic Acid* 3 (2019), https://www.ams.usda.gov/sites/default/files/media/AscorbicAcidTRFinal7172019.pdf (last accessed October 6, 2023).
[13] *Id.*
[14] Doores, S., 1993. *Organic acids*. In: Davidson, P.M., et al. (Eds.), *Antimicrobials in Food* CRC Press, pp. 95-136, http://base.dnsgb.com.ua/files/book/Agriculture/Foods/Antimicrobials-in-Food.pdf (last accessed last accessed October 6, 2023, 2023).

its website and provides examples of how citric acid is used as a preservative in beverages.[15]

18.    The FDA's view of this matter is further bolstered by a Warning Letter that it sent to Chiquita Brands International, Inc., indicating that Chiquita's "Pineapple Bites" products were misbranded within the meaning of section 403(k) of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 343(k), because "they contain the chemical preservatives ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions."[16]

***Defendant's Failure to Abide by the FDA's Regulatory Framework***

19.    The FDA specifically regulates the use of ascorbic acid for the exact fruit products that Defendant manufactures. Although these regulations permit ascorbic acid to be added to canned fruit products,[17] they do not otherwise allow Defendant to make the "100% Juice" declarations. In fact, the FDA requires canned fruits, like the Products, to use the "names of the juices in the order of predominance" followed by the words "from concentrate(s)," on their front label when such products contain two or more juices, including from concentrate. *See* 21 C.F.R. §§ 145.135(a)(4)(ii)(b),(c); 21 C.F.R. §§ 145.175 (a)(4)(ii)(b),(c); 21 C.F.R. §§ 145.170(a)(h)(4)(ii)(b),(c). Defendant is well aware of these regulations, yet chooses to ignore them, as demonstrated by the properly labeled fruit products that it also sells under its brand:

---

[15] https://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors (last accessed October 6, 2023).

[16] FDA, *Warning Letter to Chiquita Brands International, Inc. and Fresh Express Incorporated* (Oct. 6, 2010), available at https://wayback.archiveit.org/7993/20170112194314/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2010/ucm228663.htm (last accessed October 6, 2023).

[17] *See* 21 C.F.R. § 145.135(a)(1)(iv) (permitting ascorbic acid to be used in "Canned fruit cocktail" in order "to preserve color."); 21 C.F.R. § 145.135(a)(1)(vi) (permitting ascorbic acid to be used in "Canned peaches" in order "to preserve color."). Based on this framework, it is hardly surprising that all of Defendant's Products openly declare that they contain "Ascorbic Acid (Vitamin C) To Protect Color." *See supra*, ¶ 3. The FDA, however, does not permit ascorbic acid to be used in "Canned pears." 21 C.F.R. § 145.175. Despite this, Defendant adds ascorbic acid to its pear Products regardless. *See supra*, ¶ 3.



INGREDIENTS: PINEAPPLE, WATER, PINEAPPLE JUICE FROM CONCENTRATE, ASCORBIC ACID (VITAMIN C) TO PROTECT COLOR.



**Front**        **Back**

INGREDIENTS: PEACHES, PEARS, WATER, GRAPES, PEACH PULP AND JUICE, PINEAPPLE SECTORS, PEAR JUICE CONCENTRATE, HALVED CHERRIES ARTIFICIALLY COLORED RED WITH CARMINE, ASCORBIC ACID (VITAMIN C) TO PROTECT COLOR.

//
//
//
//
//
//
//
//
//
//
//
//



**Front**                    **Back**

20.    To make matters worse, Defendant's "100% Juice" misrepresentations also run afoul of pertinent FDA regulations applicable to juices. Specifically, the FDA provides that:

> "If the beverage contains 100 percent juice and also contains non-juice ingredients… [and] the 100 percent juice declaration appears on a panel of the label that does not also bear the ingredient statement, it must be accompanied by the phrase "with added — — — — — ," the blank filled in with a term such as "ingredient(s)," "preservative," or "sweetener," as appropriate (e.g., "100% juice with added sweetener")[.]" 21 C.F.R. § 101.30(b)(3).

21.    Defendant's Products fail to comply with this FDA regulation—thus giving the impression that the Products are essentially 100% drinkable juice beverages (with added fruits). Consumers are accustomed to purchasing properly labeled juices. As such, since Defendant fails to disclose that its Products in "100% Juice" also contain added ingredients—as required under the FDA—they are further misled into believing that the Products do not contain any non-juice ingredients. Although Plaintiff does not seek to enforce the FDA, Defendant's non-compliance

12

illustrates its misconduct.

22.     The global sale of healthy food products is estimated to be $4 trillion dollars and is forecasted to reach $7 trillion by 2025.[18] Based on the foregoing, consumers are willing to purchase and pay a premium for healthy and clean food items: like the deceptively advertised Products.

23.     Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and the proposed class members who suffered an injury in fact and lost money or property as a result of Defendant's deceptive conduct.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action on behalf of herself and all other similarly situated persons pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(3). Specifically, the Classes are defined as:

25.     **Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products primarily for personal, family or household purposes, and not for resale.

26.     **New York Subclass:** All persons residing in New York who, during the maximum period of time permitted by the law, purchased Defendant's Products primarily for personal, family or household purposes, and not for resale.

27.     The Classes do not include (1) Defendant, its officers, and/or its directors; or (2) the Judge to whom this case is assigned and the Judge's staff.

28.     Plaintiff reserves the right to amend the above class definitions and add additional

---

[18] Global Wellness Institute, *The Global Wellness Economy Stands at $4.4 Trillion Amidst the Disruptions of COVID-19; Is Forecast to Reach $7 Trillion by 2025*, https://www.hospitalitynet.org/news/4108643.html (last accessed October 6, 2023).

classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

29.    ***Community of Interest***: There is a well-defined community of interest among members of the Classes, and the disposition of the claims of these members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

30.    ***Numerosity***: While the exact number of members of the Classes is unknown to Plaintiff at this time and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the millions. Members of the Classes may also be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

31.    ***Existence and predominance of common questions of law and fact***: Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individuals of the Classes. These common legal and factual questions include, but are not limited to:

(a)    Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

(b)    Whether Defendant fraudulently induced Plaintiff and the members of the Classes into purchasing the Products;

(c)    Whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount thereof;

(d)    Whether Plaintiff and the members of the Classes are entitled to statutory damages; and

(e)    Whether Plaintiff and the members of the Classes are entitled to attorney's fees

14

and costs.

32.    *Typicality:* The claims of the named Plaintiff are typical of the claims of other

members of the Classes in that the named Plaintiff was exposed to Defendant's false and

misleading marketing, purchased Defendant's Products, and suffered a loss as a result of those

purchases.

33.    *Adequacy*: Plaintiff will fairly and adequately represent and protect the interests

of the Classes as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff is an

adequate representative of the Classes because she has no interests which are adverse to the

interests of the members of the Classes. Plaintiff is committed to the vigorous prosecution of this

action and, to that end, Plaintiff has retained skilled and experienced counsel.

34.    Moreover, the proposed Classes can be maintained because they satisfy both Rule

23(a) and 23(b)(3) because questions of law or fact common to the Classes predominate over any

questions affecting only individual members and a Class Action is superior to all other available

methods of the fair and efficient adjudication of the claims asserted in this action under Federal

Rule of Civil Procedure 23(b)(3) because:

(a)    The expense and burden of individual litigation makes it economically unfeasible

for members of the Classes to seek to redress their claims other than through the procedure of a

class action;

(b)    If separate actions were brought by individual members of the Classes, the

resulting duplicity of lawsuits would cause members of the Classes to seek to redress their claims

other than through the procedure of a class action; and

(c)    Absent a class action, Defendant likely will retain the benefits of its wrongdoing,

and there would be a failure of justice.

## CAUSES OF ACTION

### COUNT I
**Violation of State Consumer Protection Statues[19]**
**(On Behalf of Plaintiff and the Nationwide Class)**

35.     Plaintiff incorporates by reference each of the allegations contained in the

foregoing paragraphs of this Complaint as though fully set forth herein.

36.     The Consumer Protection Statutes of the Nationwide Class members prohibit the

use of deceptive, unfair, and misleading business practices in the conduct of trade or commerce.

37.     By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair,

and misleading acts and practices by misrepresenting that the Products are contained "In 100%

Juice." Despite those representations, however, the Products contain "ascorbic acid" and "citric

acid"[20]— non-juice synthetic preservatives.

38.     The foregoing deceptive acts and practices were directed at consumers.

---

[19] While discovery may alter the following, Plaintiff asserts that the states with similar consumer fraud laws under the facts of this case include but are not limited to: Alaska Stat. § 45.50.471, et seq.; Ariz. Rev. Stat. §§ 44-1521, et seq.; Ark. Code § 4-88-101, et seq.; Cal. Bus. & Prof. Code § 17200, et seq.; Cal. Civ. Code §1750, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Conn. Gen Stat. Ann. § 42- 110, et seq.; 6 Del. Code § 2513, et seq.; D.C. Code § 28-3901, et seq.; Fla. Stat. Ann.§ 501.201, et seq.; Ga. Code Ann. § 10-1-390, et seq.; Haw. Rev. Stat. § 480-2, et seq.; Idaho Code. Ann. § 48-601, et seq.; 815 ILCS 501/1, et seq.; Ind. Code § 24-5-0.5-2, et seq.; Kan. Stat. Ann. § 50-623, et seq.; Ky. Rev. Stat. Ann. § 367.110, et seq.; LSA-R.S. 51:1401, et seq.; Me. Rev. Stat. Ann. Tit. 5, § 207, et seq.; Md. Code Ann. Com. Law, § 13-301, et seq.; Mass. Gen Laws Ann. Ch. 93A, et seq.;  Mich. Comp. Laws Ann. § 445.901, et seq.; Minn. Stat. § 325F, et seq.; Mo. Rev. Stat. § 407, et seq.; Neb. Rev. St. §§ 59-1601, et seq.; Nev. Rev. Stat. § 41.600, et seq.; N.H. Rev. Stat. § 358-A:1, et seq.; N.J. Stat. Ann. § 56:8, et seq.; N.M. Stat. Ann. § 57-12-1, et seq.; N.Y. Gen. Bus. Law § 349, et seq.; N.C. Gen Stat. § 75-1.1, et seq.; N.D. Cent. Code § 51-15, et seq.; Ohio Rev. Code Ann. § 1345.01, et seq.; Okla. Stat. tit. 15 § 751, et seq.; Or. Rev. Stat. § 646.605, et seq.; 73 P.S. § 201-1, et seq.; R.I. Gen. Laws § 6-13.1- 5.2(B), et seq.; S.C. Code Ann. §§ 39-5- 10, et seq.; S.D. Codified Laws § 37-24-1, et seq.; Tenn. Code Ann. § 47-18-101, et seq.; Tex. Code Ann., Bus. & Con. § 17.41, et seq.; Utah Code. Ann. § 13-11-175, et seq.; 9 V.S.A. § 2451, et seq.; Va. Code Ann. § 59.1-199, et seq.; Wash. Rev. Code § 19.86.010, et seq.; W. Va. Code § 46A, et seq.; Wis. Stat. § 100.18, et seq.; and Wyo. Stat. Ann. § 40-12-101, et seq.

[20] Defendant's canned "Yellow Cling Sliced Peach in Fruit Juice" does not contain citric acid.

39.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

40.     As a result of Defendant's deceptive practices, Plaintiff and the Nationwide Class members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendant's misrepresentations.

41.     On behalf of herself and the Nationwide Class members, Plaintiff seeks to recover their actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT II
### Violation of New York G.B.L. § 349
### (On Behalf of Plaintiff and the New York Subclass)

42.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

43.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

44.     In its sale of Products throughout the state of New York, at all relevant times herein, Defendant conducted business and trade within the meaning and intendment of New York's General Business Law § 349.

45.     Plaintiff and the New York Subclass members are consumers who purchased the Products from Defendant for their personal use.

46.     By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by representing that the Products are contained "In 100% Juice." Despite those representations, however, the Products contain "ascorbic acid" and "citric

acid"[21]— non-juice synthetic preservatives.

47.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

48.    As a result of Defendant's deceptive practices, Plaintiff and the New York Subclass members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendant's misrepresentations.

49.    On behalf of herself and the New York Subclass members, Plaintiff seeks to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## COUNT III
### Violation of New York G.B.L. §350
### (On Behalf of Plaintiff and the New York Subclass)

50.    Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

51.    New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

52.    Defendant violated New York General Business Law § 350 by representing on the packaging of the Products that the Products are contained "In 100% Juice." Despite those representations, however, the Products contain "ascorbic acid" and "citric acid"[22]— non-juice synthetic preservatives.

53.    The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

54.    Defendant's misrepresentations have resulted in consumer injury or harm to the

---

[21] Defendant's canned "Yellow Cling Sliced Peach in Fruit Juice" does not contain citric acid.
[22] Defendant's canned "Yellow Cling Sliced Peach in Fruit Juice" does not contain citric acid.

public interest.

55.     As a result of Defendant's false advertising, Plaintiff and the New York Subclass members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendant's misrepresentations.

56.     On behalf of herself and the New York Subclass members, Plaintiff seeks to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Classes; and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)     For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(c)     For compensatory, statutory and punitive damages in amounts to be determined by the Court and/or jury;

(d)     For prejudgment interest on all amounts awarded;

(e)     For an order of restitution and all other forms of equitable monetary relief; and

(f)     For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: October 6, 2023                                       Respectfully submitted,

**GUCOVSCHI ROZENSHTEYN, PLLC**

By:  /s/ Adrian Gucovschi
      Adrian Gucovschi, Esq.

Adrian Gucovschi
140 Broadway, Suite 4667
New York, NY 10005
Tel: (212) 884-4230
adrian@gr-firm.com

*Counsel for Plaintiff and the Classes*

EXHIBIT A

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA

CYNTHIA ADAMS, individually and on behalf of all others simi⊞
Plaintiff(s)

V.

Civil Action No.: 7:23-cv-00121-EKD

AMAZON.COM, INC. and AMAZON.COM SERVICES LLC,
Defendant(s)

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER ENTITIES WITH A DIRECT FINANICAL INTEREST IN LITIGATION

ONLY ONE FORM NEEDS TO BE COMPLETED FOR A PARTY EVEN IF THE PARTY IS REPRESENTED BY MORE THAN ONE ATTORNEY.  DISCLOSURES MUST BE FILED ON BEHALF OF INDIVIDUALS AS WELL AS CORPORATIONS AND OTHER LEGAL-ENTITIES.  COUNSEL HAS A CONTINUING DUTY TO UPDATE THIS INFORMATION.

IF YOU ANSWER "YES" TO ANY OF THE FOLLOWING QUESTIONS, THIS STATEMENT MUST BE FILED IN ECF AS A POSITIVE CORPORATE DISCLOSURE STATEMENT.

Pursuant to Standing Order entered May 15, 2000.

AMAZON.COM SERVICES LLC        who is    Defendant
(Name of party you represent)            (Plaintiff/Defendant)

makes the following disclosure:

1.  Is the party a publicly held corporation or other publicly held entity?
      ☐ Yes    ☒ No

2.  Does the party have any parent corporations?
      ☒ Yes    ☐ No

      If yes, identify all parent corporations, including grandparent and great grandparent corporations:

      AMAZON.COM SALES, INC.; AMAZON.COM, INC.

3.  Is 10 percent or more of the party's stock owned by a publicly held corporation or other publicly held entity?
      ☐ Yes    ☒ No

      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?
      ☐ Yes    ☒ No

      If yes, identify all such owners:

5.  Is the party a trade association?
      ☐ Yes    ☒ No

      If yes, identify all members of the association, their parent corporations, and any publicly held companies that own ten (10%) percent or more of the party's stock:

/s/ Michael J. Finney        3/22/2023
(Signature)                   (Date)